925 So.2d 850 (2005)
James EVANS, Jr., Appellant,
v.
CITY OF ABERDEEN, Mississippi, Appellee.
No. 2003-CA-01638-COA.
Court of Appeals of Mississippi.
April 26, 2005.
Rehearing Denied August 2, 2005.
*851 J. Dudley Williams, Monroe, attorneys for appellant.
Robert H. Faulks, attorneys for appellee.
EN BANC.
LEE, P.J., for the Court.
¶ 1. The City of Aberdeen Police Department received a tip from a confidential informant that drug trafficking was taking place at the Evans's house in Aberdeen, Mississippi, and a search warrant was subsequently authorized by a city judge. While executing the warrant, the police officers seized a brass container attached to a Brillo pad, a piece of tin foil with holes in it, plastic bags, and a cigarette pack with some residue. The officers also discovered $7,600 in cash which was hidden beneath a large console television. The cash was placed in a brown paper bag, which the officers retrieved from the basement of the police department. At the station, the officers hid the money behind the station and walked a canine unit through the area. The dog alerted on the bag, indicating the presence of drugs.
¶ 2. The circuit court judge found that the items seized from the bedroom qualified as drug distributing paraphernalia, and that the money was found in close proximity to the drug distributing paraphernalia, thereby creating an evidentiary presumption that the cash was forfeitable. The judge further found that Evans's explanation as to the sources of the funds did not rebut the presumption that the funds were forfeitable. Evans now appeals, raising the following issues:
I. WHETHER THE OBJECTS SEIZED FROM EVANS'S ROOM WERE PROPERLY CLASSIFIED AS DRUG PARAPHERNALIA.
II. WHETHER THE COURT CORRECTLY HELD THAT THE SEIZED CASH WAS IN CLOSE PROXIMITY TO PARAPHERNALIA, AS TO APPLY AN EVIDENTIARY PRESUMPTION IN FAVOR OF THE CITY THAT THE CASE WAS SUBJECT TO FORFEITURE
¶ 3. Finding that the City failed to establish the presence of drugs or drug distributing paraphernalia and failed to show that the money was used to facilitate a violation of the Uniform Controlled Substance Laws, we reverse and render.

FACTS
¶ 4. Officer Randy Perkins of the Aberdeen Police Department was approached by a confidential informant who told him that Coreno Blanchard and James Evans, Jr. were storing crack cocaine at Evans's house, and that the drugs were "broke up and sorted out in bags and then delivered out to the dealers on the streets." A city court judge issued a search warrant, enabling the Aberdeen Police Department to search the premises of the Evans house, *852 together with all vehicles parked at the residence.
¶ 5. Officer Perkins testified that their search was limited to Evans's bedroom. The officers found no drugs but they did find a "brass container ... that had ashes with a Brillo pad and residue on it." Officer Perkins testified that such a contraption is typically used to make a crack pipe. The officers also found "a piece of tin foil... with holes on it" on a dresser. Officer Perkins stated that someone "had been using that to smoke crack cocaine." The officers found "plastic bags" for the "transport or storage of drugs" and a cigarette pack with residue.
¶ 6. The officers pulled a big console television away and found rolls of money underneath the television. The money amounted to $7,600 in cash and was rolled in black hair bands in thousand dollar brackets. Officer Perkins testified that such a large sum of money concealed in this manner indicates that the money was used to purchase drugs.
¶ 7. After Officer Perkins and the other officers finished searching the house, the confidential informant called Officer Perkins and told him that the officers had overlooked the drugs, which were believed to be stored in the deep freeze in the kitchen. Evans's mother allowed Officer Perkins to check the deep freeze for drugs, but no drugs were discovered.
¶ 8. The $7,600 cash was placed in a brown paper bag that was found in the basement of the police department. None of the objects seized from Evans's room were tested for drugs. The next day, the Amory Police Department brought their drug detection dog to the Aberdeen Police Department. The dog never walked by the money itself prior to its placement in the bag, and there was no dog "walk by" at the test location before the bag containing the money was placed there. The money was hidden at random behind the police station, and the dog alerted that the money was positive for drugs. However, Officer Perkins admitted that the location in which the bag was placed or the bag itself may have been contaminated. He also admitted that the money in general circulation is tainted with drugs. Officer Perkins testified that he was unsure whether the dog "hit" on the money or the bag that contained it.
¶ 9. Evans testified that the $7,600 cash that was seized was money he saved for the purpose of buying a car. Evans produced copies of the savings bonds he had redeemed in March of 2000. These bonds totaled $3,150. Evans testified that the rest of the money came from earnings, birthday, Christmas, and graduation gifts, and allowance. Evans was living with his parents and claimed that he tricked them into believing he had no money.
¶ 10. At the conclusion of the trial, the circuit court judge found in favor of the City of Aberdeen and ordered that the $7,600 in cash be forfeited to the City of Aberdeen, finding that the cash was used to facilitate a violation of the Uniform Controlled Substance Law. The judge held that the City had met its burden of proof, a preponderance of the evidence, and the cash was forfeitable. City of Meridian v. Hodge, 632 So.2d 1309, 1311 (Miss.1994); Saik v. State ex rel. Miss. Bureau of Narcotics, 473 So.2d 188, 191 (Miss.1985). See also Miss.Code Ann. § 41-29-179(2) (Rev. 2001). It found that the objects seized from Evans's room were drug distributing paraphernalia. Miss.Code Ann. § 41-29-105(v) (Rev.2001). It further found that the $7,600 cash was found in close proximity to the distributing paraphernalia, thereby providing the City with the evidentiary presumption that the cash was forfeitable. Miss.Code Ann. § 41-29-153(a)(7) (Rev. 2001). The court found Evans's explanation *853 as to the source of the funds failed to rebut this presumption.

ANALYSIS
¶ 11. Forfeiture statutes are penal in nature and must be strictly construed. Parcel Real Property Located at 335 West Ash Street, Jackson, Miss. v. City of Jackson, 664 So.2d 194, 199 (Miss. 1995); Jackson v. State ex rel. Miss. Bureau of Narcotics, 591 So.2d 820, 822 (Miss.1991). In a civil forfeiture case, the question is whether, given all of the evidence taken together, a rational trier of fact could have found that the funds were the product of or the instrumentalities of violations of the State's Uniform Controlled Substances Laws. Hickman v. State ex. rel. Miss. Dep't of Public Safety, 592 So.2d 44, 48 (Miss.1991). The trier of fact may act on circumstantial evidence and inferences as well as direct evidence. Id. at 46.

I. WHETHER THE OBJECTS SEIZED FROM EVANS'S ROOM WERE PROPERLY IDENTIFIED AS DRUG DISTRIBUTING PARAPHERNALIA.
¶ 12. Officer Perkins indicated that a brass container attached to a Brillo pad "usually indicates that in a bedroom like that with ashes around it that its been used to smoke a crack pipe," that the tin foil would "indicate somebody had been using that to smoke crack cocaine with," and that the plastic bags "indicate the transport or storage of drugs."
¶ 13. The City believed that the cash was used for drug trafficking, arguing that the cash was found in close proximity to the objects in Evans's room which the City believed were used for the purposes of consuming, transporting, or storing drugs. Mississippi Code Annotated Section 41-29-153(a)(7) provides, in relevant part:
(a) The following are subject to forfeiture:
(7) Everything of value, including real estate, furnished, or intended to be furnished, in exchange for a controlled substance in violation of this article, all proceeds traceable to such an exchange, and all monies, negotiable instruments, businesses or business investments, securities, and other things of value used, or intended to be used, to facilitate any violation of this article. All monies, coin and currency found in close proximity to forfeitable controlled substances, to forfeitable drug manufacturing or distributing paraphernalia, or to forfeitable records of the importation, manufacture or distribution of controlled substances are presumed to be forfeitable under this paragraph; the burden of proof is upon claimants of the property to rebut this presumption.
¶ 14. The City attempted to establish that the objects seized from Evans's room were classified as drug manufacturing or distributing paraphernalia. However, there was no testimony that anything in James's room was used to manufacture or distribute drugs. Although there was testimony that plastic baggies could indicate the storage of drugs, the statute clearly requires a finding that the money was found in close proximity of "manufacturing or distributing paraphernalia." Id. On appeal the State argues that it "all moneys found in close proximity to paraphernalia are presumed to be forfeitable." We disagree. The statute clearly requires that the money must be found in close proximity to manufacturing or distributing paraphernalia.
¶ 15. The City argues that it established the fact that the objects found in Evans's bedroom were drug distributing and manufacturing paraphernalia through expert testimony. It asserts that Officer *854 Perkins is clearly an experienced narcotics agent because Officer Perkins attended five drug schools, and in the three years prior to the search sub judice Perkins had been assigned the specific task of detecting and identifying illegal drug trafficking in Aberdeen. However, there was no testimony linking the items seized from the bedroom with drug manufacturing or drug distribution. Additionally, Officer Perkins's testimony cannot be considered expert testimony because the City did not qualify Officer Perkins as an expert witness at trial. See M.R.E. 702.
¶ 16. Under Mississippi Code Annotated Section 41-29-153(a)(7), the money could be forfeited if it were in close proximity to drug distributing paraphernalia or drug manufacturing paraphernalia. We reverse and render the circuit court's finding that the objects seized from Evans's bedroom qualified as distributing paraphernalia, because there was no such evidence supporting this finding.

II. WHETHER THE COURT CORRECTLY HELD THAT THE SEIZED CASH WAS IN CLOSE PROXIMITY TO PARAPHERNALIA, AS TO APPLY AN EVIDENTIARY PRESUMPTION IN FAVOR OF THE CITY THAT THE CASH WAS SUBJECT TO FORFEITURE
¶ 17. Money found to be within close proximity to drug distributing or manufacturing paraphernalia is presumed to be forfeitable. Miss.Code Ann. § 41-29-153(a)(7) (Rev.2001). In the present case, the circuit court found that the objects seized from Evans's room were drug distributing paraphernalia, and that the cash found behind the television was in close proximity to the distributing paraphernalia. Thus, the circuit court found that the City had shown that the $7,600 cash was presumed to be forfeitable. Since we have reversed and rendered the circuit court's finding that the objects seized from Evans's room were classified as drug distributing paraphernalia, we must also reverse and render the circuit court's finding that the $7,600 cash was presumed to be forfeitable. Nevertheless, there is a possibility that the $7,600 in cash is forfeitable, even if the evidentiary presumption in favor of the City does not apply.
¶ 18. The City claims that the money should be forfeitable because Evans had no means of saving $7,600 in cash. Evans earned approximately $500 in 1999, approximately $507 in the year 2000, and $345 in the year 2001. Most of his income of $2,067 in the year 2002 was earned after the search warrant was executed. Social security and medicare taxes were withheld from these pay checks. Most of the $3,100 in savings bonds that Evans cashed in were redeemed more than two years before the search warrant. Evans had no records or documents establishing that he received approximately $4,000 in the form of weekly allowances, and gifts for birthdays, Christmas, and graduation, because he did not use a bank account.
¶ 19. In United States v. $38,600 in U.S. Currency, 784 F.2d 694 (5th Cir. 1986), the Fifth Circuit decided the issue of whether the district court properly ordered forfeiture of $38,600 in United States currency, all in cash, taped under the claimant's car seat. The claimant, Alvaro Freitas, was stopped at a border patrol checkpoint, where the border patrol agents performed a thorough inspection on his car and its contents after an agent smelled marijuana on Freitas's breath. Id. at 696. The district court determined that the money found in Freitas' vehicle was forfeitable due to the following factors: (1) the border patrol agents' discovery of a pipe bearing marijuana residue and cigarette rolling papers, and (2) the claimant's persistent evasiveness when responding to the agent's questions concerning *855 his destination and the identity of the owner of the money. Id. at 697. The Fifth Circuit disagreed, stating:
There seems little question that the evidence, when considered collectively, gives rise to a strong suspicion, perhaps even probable cause, of some illegal activity. It is not quite so apparent, however, that these facts give rise to a reasonable belief, supported by more than mere suspicion, that Alvaro Freitas furnished, intended to furnish, or had received the money in exchange for drugs.
Id. at 698. The court reversed and rendered.
¶ 20. The City relies on the fact that a drug dog had alerted to the presence of drugs. "[T]here is some indication that residue from narcotics contaminates as much as 96% of the currency currently in circulation." United States v. $5,000.00 in U.S. Currency, 40 F.3d 846, 849 (6th Cir. 1994) (quoting United States v. $80,760.00 in U.S. Currency, 781 F.Supp. 462, 475 & n. 32 (N.D.Tex.1991)). See also Jones v. U.S. Drug Enforcement Admin., 819 F.Supp. 698, 719-21 (M.D.Tenn.1993) (concluding, given growing evidence of widespread currency contamination, that "the continued reliance of courts and law enforcement officers on dog sniffs to separate `legitimate' currency from `drug-connected' currency is logically indefensible"). Thus, a court should "seriously question the value of a dog's alert without other persuasive evidence." $80,760.00, 781 F.Supp. at 476 (citations omitted).
¶ 21. The City also argues that the large amount of money that was found in Evans's bedroom proves that the money was used for illegal drug trafficking. In Jackson v. State ex rel. Miss. Bureau of Narcotics, 591 So.2d 820, 822-23 (Miss. 1991), the Mississippi Supreme Court upheld a forfeiture of $1,087, finding that the large amount of money justified its forfeiture. However, Jackson is distinguishable from the present case because the money was seized after the claimant was actually caught in a narcotics sting operation. There is no direct evidence of drug activity in the present case. Moreover, federal courts have held that "fifteen to twenty thousand dollars is hardly enough cash, standing alone, to justify more than a suspicion of illegal activity." $5,000.00, 40 F.3d at 850 (quoting United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1072 (9th Cir.1994) (overruled by statute on other grounds)).
¶ 22. Before forfeitures will be decreed or adjudged, they must come within the terms of a statute imposing liability. Neely v. State ex rel. Tate County, 628 So.2d 1376, 1381 (Miss.1993) (citing Reed v. State ex rel. Miss. Bureau of Narcotics, 460 So.2d 115, 118 (Miss.1984)). In the case sub judice, the City's basis for claiming the $7,600 in cash was forfeitable was that the cash was found in close proximity to items it claimed were drug paraphernalia. There were no drugs or drug paraphernalia present, and the remaining evidence the City uses to assert that the cash was used for the purpose of facilitating a violation of the Uniform Controlled Substance Law demonstrates only a suspicion of illegal activity. We order the City of Aberdeen to return the $7,600 in cash to Evans.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF MONROE COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., BRIDGES, P.J., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.