GRIFFIS, J.,
for the Court:
¶ 1. Carlos Jackson was convicted of two counts of sexual battery and one count each of aggravated assault, armed robbery, and burglary of a dwelling. On appeal, Jackson argues: (1) the trial court erred during his sentencing phase because it used evidence outside of the evidence introduced during the trial, and his sentence was excessive; (2) the trial court erred in allowing the testimony of Sunday Montague; (3) the trial court erred in granting the State’s Batson challenges; (4) his counsel’s performance was ineffective; and (5) the cumulative effect of all the errors requires a reversal. We find no error and affirm.
FACTS
¶ 2. In the early morning hours of June 10, 2007, Jackson kicked in the back door of Chris Carroll (Carroll) and Deneciya Reynolds’s (Reynolds) apartment while the couple and their two children slept. He disguised himself by wrapping a t-shirt around his face. Once inside, he grabbed a knife out of the kitchen drawer.
¶ 3. He then walked to the couple’s bedroom, broke through the door, and entered. He demanded money. Reynolds and Carroll awoke. Jackson cut Carroll’s hand with his knife and then demanded that Carroll go into the bathroom. He took Reynolds into another room where the children were asleep. He ripped Reynolds’s clothes and forced her to perform oral sex on him. Then, he forced her to receive oral sex from him.
¶ 4. Carroll left the bathroom, and Jackson attempted to tie him up with a television cord. Carroll fought Jackson. While Jackson and Carroll fought, Reynolds grabbed one of her children and fled the apartment. Jackson saw Reynolds leaving and ran after her. Reynolds ran into Patrick Andrews’s apartment across the hall, and Jackson followed her into the other apartment. Carroll followed Jackson, and the two men continued to fight.
¶ 5. A neighbor, Andrews, broke up the fight, and Jackson fled the apartment. Carroll and a group of other men chased Jackson. He hid in the woods next to the apartment complex until the police arrived and arrested him. He was indicted and pleaded not guilty by reason of insanity.
¶ 6. During voir dire, all five of the defense’s peremptory challenges were made on Caucasians. The State noted for the record that “each strike the defense has made has been against members of the white race.” The trial court reviewed the five peremptory challenges. The defense listed race-neutral reasons for each strike.
¶ 7. The defense challenged two of the jurors because both were in the medical field. The defense’s stated race-neutral reason for the challenges was because the jurors might be “swayed by [their] own education and training as opposed to the testimony and medical opinions that the respective doctors will testify to.” The trial court denied both peremptory challenges, finding that it was not a proper race-neutral reason because the defense could pose certain questions during voir dire to determine if the ladies believed that it would have been difficult not to be swayed by medical training and education as opposed to considering the testimony of the expert in the medical field.
¶ 8. The defense challenged another juror because he was a mail carrier, and its race-neutral reason was as follows: “I have had life experience with mail carriers[,] and I don’t value their judgment.” The trial court denied the challenge because it found the reason to not be sufficiently race neutral.
¶ 9. At trial, Jackson did not dispute the evidence offered by the State; however, he argued that he was insane at the time he *1207 had committed the crimes. The defense’s lay witnesses were Jackson’s parents, Frank Tate and Wayne Dowdy. The defense’s expert witness, Dr. Timothy Summers, testified that in his opinion Jackson did not have the mental capacity to differentiate between right and wrong and to understand the consequences of his actions on June 10, 2007.
¶ 10. The State called Dr. Chris Lott and Sunday Montague as rebuttal witnesses. Dr. Lott testified that he believed that Jackson had mental issues but that Jackson could differentiate between right and wrong and that he understood the consequences of his actions on June 10, 2007.
¶ 11. Montague testified that she had dated Jackson for a couple of years. She testified that she had seen Jackson use cocaine at least a dozen times within six months to a year prior to the incident. The last time that she saw him use cocaine was three days prior to the incident. She testified that Jackson was usually a very calm person; but after he used cocaine, his personality changed, and he would become very upset and act crazy.
¶ 12. The jury found Jackson was sane at the time he committed the crimes and found him guilty of all five charges. The trial court denied his post-trial motion for a new trial.
ANALYSIS

1. Whether the trial court erred in deciding Jackson’s sentence.

¶ 13. Jackson argues that the trial court erred during the sentencing phase because it considered evidence outside of the evidence introduced at trial, and it did not consider Jackson’s mental defects. He claims that his sentence is excessive and in violation of the Eighth Amendment because he is legally mentally retarded. He offers only his assertion and does not cite any authority.
¶ 14. “Sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute.” Beamon v. State, 9 So.3d 376, 380 (¶ 11) (Miss.2009) (quoting Wall v. State, 718 So.2d 1107, 1114 (¶ 29) (Miss.1998)). The supreme court has held “that a sentence that is within the statutorily defined parameters of the crime, usually is upheld and not considered cruel and unusual punishment.” Id. (citing Barnwell v. State, 567 So.2d 215, 222 (Miss.1990)).
¶ 15. We evaluate the maximum sentence allowed by law against the sentence given. For the two counts of sexual battery, the maximum sentence for each count of sexual battery is thirty years. Jackson was sentenced to serve twenty years for each count of sexual battery. Miss.Code Ann. § 97-3-101 (Rev.2006). For aggravated assault, the maximum sentence is twenty years. Jackson was sentenced to ten years for aggravated assault. Miss. Code Ann. § 97-3-7(2) (Supp.2009). For armed robbery, the minimum sentence is three years, and the maximum sentence is life. Jackson was sentenced to serve fifteen years for armed robbery. Miss.Code Ann. § 97-3-79 (Rev.2006). For burglary of a dwelling, the maximum sentence is twenty-five years. Jackson was sentenced to serve fifteen years for burglary of a dwelling. Miss.Code Ann. § 97-17-23 (Supp.2009). The trial court also directed that each sentence was to run consecutively.
¶ 16. Because Jackson’s sentence was within the statutory guidelines, this Court has no legal basis to regard Jackson’s sentences as excessive or to find that the trial court abused its discretion. Further, Jackson’s brief asserts that the sentencing was improper because of Jackson’s mental retardation and insanity. The question of Jackson’s sanity, at the time of the crime, *1208 was a question of fact that was determined by the jury. As to Jackson’s allegation that he was mentally retarded, there was a reference to the fact that Jackson may be mildly retarded. However, that issue was not raised or presented to the trial court. Further, during the sentencing hearing, Jackson’s attorney only asked for the court’s “mercy” and did not raise any issue as to his possible mental retardation as a mitigating factor in his sentence. Finally, Jackson argues that the trial court erred when it did not require a pre-sentencing investigation. However, there is no evidence that Jackson requested any form of pre-sentencing investigation. Accordingly, this issue has no merit.

2. Whether the trial court erred in allowing the testimony of Sunday Montague.

¶ 17. Jackson contends that Montague’s testimony prejudiced Jackson because the State failed to list her as a witness and because she was not properly sequestered during trial. The State responds that it had no duty to disclose its potential list of rebuttal witnesses and that there is no proof that Montague was in the courtroom during the testimony of any other witness.
¶ 18. Uniform Rule of Circuit and County Court 9.04 requires the State to disclose to the defense the names and addresses of all witnesses for the State’s case-in-chief, along with any written or recorded statements. The State has no duty to disclose the names of possible rebuttal witnesses unless the State has requested a notice of alibi defense. Burnside v. State, 912 So.2d 1018, 1026 (¶ 18) (Miss.Ct.App.2005).
¶ 19. Defense counsel learned what Montague’s testimony would be the morning that she was called to be a rebuttal witness. The defense objected to her being called because of the “untimely disclosure of her identity.” The trial court overruled the objection, and the prosecutor explained that until the day before calling Montague the State believed that the defense’s expert, Dr. Summers, would affirmatively testify to Jackson’s alcohol and drug addiction. When Dr. Summers did not testify to that conclusion, the State called a rebuttal witness to provide testimony that she had personally watched the defendant use cocaine and that she had personally observed the effects of cocaine on defendant as recently as three days prior to the commission of the crime.
¶ 20. Here, the evidence offered through Montague to overcome the insanity defense was rebuttal evidence; thus, allowing a witness, who was first disclosed on morning of trial, to testify was not a discovery violation.
¶ 21. The purpose of the witness-sequestration rule is to prevent a witness from adapting his/her testimony to previous testimony. Douglas v. State, 525 So.2d 1312, 1316 (Miss.1988) (citing Geders v. United States, 425 U.S. 80, 87, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976)). When a party invokes the rule, the trial court must apply it; the trial court has no discretion. Finley v. State, 725 So.2d 226, 233 (¶ 22) (Miss.1998). The witness-sequestration rule applies to rebuttal witnesses. Id.
¶22. The defense failed to object to Montague testifying at trial on the ground that she was not properly sequestered during trial. Also, there is no evidence in the record to show that Montague was in the courtroom during previous testimony. Accordingly, this issue is procedurally barred and without merit.

3. Whether the trial court erred in granting the State’s Batson challenges.

¶23. Jackson claims that the State failed to make a prima facie case to *1209 prove that race was the controlling issue in the use of the defense’s peremptory challenges. This Court gives great deference to the trial court’s findings of whether or not a peremptory challenge was race neutral. Manning v. State, 765 So.2d 516, 519 (¶ 8) (Miss.2000).
¶ 24. In Batson, the United States Supreme Court established a three-part test for a party to make out a prima facie case of purposeful discrimination in jury selection. Batson v. Kentucky, 476 U.S. 79, 96, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The objecting party must show that:
(a) he is a member of a cognizable racial group;
(b) the non-objecting party exercised peremptory challenges to remove venire members of the defendant’s race; and
(c) these facts and any other relevant circumstances raise an inference that the non-objecting party used that practice to exclude the veniremen from the petit jury on account of their race.
See id. at 96, 106 S.Ct. 1712.
¶ 25. Once the objecting party does so, the non-objecting party is then required to provide a race-neutral reason for exercising the challenge. Id. at 97, 106 S.Ct. 1712. The court may accept the reasons given and allow the challenge. Whether an objecting party has presented a prima facie case is a determination of fact, and the trial judge is afforded great discretion in evaluating whether the objecting party has met this burden. Thorson v. State, 721 So.2d 590, 593 (¶ 4) (Miss.1998). However, once a party “has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot.” Estate of Jones v. Phillips ex rel. Phillips, 992 So.2d 1131, 1143 (¶ 27) (Miss.2008) (citation omitted).
¶ 26. Here, the defense exercised all of its peremptory challenges on Caucasians. Subsequently, the following exchange occurred:
By the State: Judge, the State wants to note that each strike the defense has made has been against members of the white race.
By the Court: Alright.
By the Defense: I challenged Mr. Greer and Ms. Oliver because they’re both registered nurses with a nursing history. ...
Without objecting and without prompting by the trial court, the defense provided a race-neutral reason for each peremptory challenge. The trial court did not directly rule on whether or not the State made a prima facie showing of purposeful discrimination. The trial court ruled on the ultimate issue of the race-neutral reasons as they were offered by the defense.
¶ 27. In this appeal, Jackson argues that the State “did not make a prima facie case to prove that race was the controlling issue in the challenge.” Indeed, the State had the burden to make a prima facie case that the defense exercised its peremptory challenges on the basis of race before a Batson hearing was necessary. Batson, 476 U.S. at 94, 106 S.Ct. 1712. However, because the Jackson’s counsel offered his race-neutral reasons for the strikes before the trial court ruled on the question of intentional discrimination, the preliminary issue of whether the State made a prima facie case was waived by Jackson and is now moot. In his brief, Jackson argues that he had “good reason to challenge” one juror because he was a mail carrier and that he had previously accepted white jurors. However, Jackson provides no authority for his position. Accordingly, we cannot say the trial judge abused his discretion. This issue lacks merit.

*1210
Ip. Whether the 'performance of Jackson’s counsel was ineffective.

¶ 28. Jackson asserts that his counsel’s performance was ineffective. To prove ineffective assistance of counsel, Jackson must show that: (1) his counsel’s performance was deficient, and (2) this deficiency prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The burden of proof rests with Jackson to show both prongs. McQuarter v. State, 574 So.2d 685, 687 (Miss.1990). Under Strickland, there is a strong presumption that counsel’s performance falls within the range of reasonable professional assistance. Strickland, 466 U.S. at 689, 104 S.Ct. 2052. “[T]he defendant must overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ ” Burns v. State, 813 So.2d 668, 673 (¶ 14) (Miss.2001) (citations omitted). To overcome this presumption, “[t]he defendant must show that there is a reasonable probability that, but for the counsel’s unprofessional errors, the result of the proceeding would have been different.” Strickland, 466 U.S. at 694, 104 S.Ct. 2052.
¶ 29. Furthermore, the merits of an ineffective-assistanee-of-counsel claim on direct appeal should be addressed only when: “(1) the record affirmatively show[s] ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.” Colenburg v. State, 735 So.2d 1099, 1101 (¶ 5) (Miss.Ct.App.1999). If this Court does not reverse on other grounds and is unable to conclude that the defendant’s counsel was constitutionally ineffective, it should affirm “without prejudice to the defendant’s right to raise the ineffective assistance of counsel issue via appropriate post-conviction proceedings.” Id. Review on direct appeal of an ineffective-assistance-of-counsel claim is confined strictly to the record. Id. at 1102 (¶ 6).
¶ 30. Jackson claims that his counsel was ineffective due to counsel: (a) putting the defense’s expert witness, Dr. Summers, on the stand while Dr. Summers was allegedly intoxicated; (b) arguing the defense of insanity; and (c) not spending enough time on voir dire.

A. Defense Counsel Calling Dr. Summers as an Expert Witness

¶ 31. Jackson contends that Dr. Summers was intoxicated and that his defense counsel should not have put Dr. Summers on the stand. He claims that Dr. Summers’s demeanor and incoherence were the basis for the jury’s verdict.
¶ 32. Upon review of the record, it is unclear that these assertions amount to ineffective assistance of counsel. “ ‘[C]ounsel’s failure to file certain motions, call certain witnesses, ask certain questions, or make certain objections fall[s] within the ambit of trial strategy’ and do not give rise to an ineffective[-]assistance[-]of[-]counsel claim.” Pruitt v. State, 807 So.2d 1236, 1240 (¶ 8) (Miss.2002). Although Dr. Summers had been hit in the head with a chair a few days before trial and had suffered from some numbness in part of his face, nothing in the record supports Jackson’s claim that he was intoxicated. Further, Jackson has not proven that the outcome of the case was prejudiced by Dr. Summers’s testimony, especially in light of the overwhelming weight of evidence against him, including the testimonies of Reynolds and Carroll.

B. Defense Counsel’s Trial Strategy

¶ 33. Jackson asserts that he did not have the mental capacity to choose what his trial strategy should have been. *1211 Jackson claims that he and his parents did not agree with the defense, but his counsel assured them that the defense of insanity was the best defense.
¶ 34. Defense’s strategy to argue that Jackson was insane falls under the ambit of trial strategy and does not give rise to ineffective assistance of counsel. Also, Jackson fails to show how the outcome of the case was prejudiced by defense counsel’s strategy.

C. Voir Dire

¶ 35. Jackson contends that had defense counsel spent more time on voir dire, he would have laid the proper foundation for the defense’s peremptory challenge; therefore, the jury would have found Jackson not guilty.
¶ 36. “Generally ... an attorney’s actions during voir dire ... [are] a matter of trial strategy, which ‘cannot be the basis for a claim of ineffective assistance of counsel unless counsel’s tactics are shown to be so ill chosen that it permeates the entire trial with obvious unfairness.’ ” Harrell v. State, 947 So.2d 309, 315 (¶ 21) (Miss.2007) (quoting Burns, 813 So.2d at 675-76 (¶ 22)). While defense counsel could have asked more questions of the medical professionals on venire about their abilities to accept the medical testimony presented, this action did not make the entire trial unfair to Jackson. Jackson offers no evidence to show that his attorney’s performance during voir dire was so inadequate that the outcome of the trial would not have been the same.
¶ 37. We find that the record before us on appeal is insufficient to affirmatively show ineffective assistance of counsel of constitutional dimensions. As such, ■ we deny relief on this issue without prejudice so that Jackson may present an ineffective-assistance-of-counsel claim in a properly filed motion for post-conviction collateral relief, if he so chooses.

5. Whether cumulative error warrants reversal.

¶ 38. Finally, Jackson argues that this Court should grant his requested relief based on the cumulative errors committed at the trial. However, we have found that all of Jackson’s assignments of error are without merit. “As there was no reversible error in any part, so there is no reversible error to the whole.” McFee v. State, 511 So.2d 130, 136 (Miss.1987). Accordingly, this issue is also without merit.
¶ 39. THE JUDGMENT OF THE PIKE COUNTY CIRCUIT COURT OF CONVICTION OF COUNTS I AND II, SEXUAL BATTERY, AND SENTENCE OF TWENTY YEARS FOR EACH COUNT; COUNT III, AGGRAVATED ASSAULT, AND SENTENCE OF TEN YEARS; COUNT IV, ARMED ROBBERY, AND SENTENCE OF FIFTEEN YEARS; AND COUNT V, BURGLARY OF A DWELLING, AND SENTENCE OF FIFTEEN YEARS, ALL TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY A $5,000 FINE FOR EACH COUNT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PIKE COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT. IRVING, J., NOT PARTICIPATING.