# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CP-01097-COA

| | |
|---|---|
| IN THE MATTER OF ONE HUNDRED THIRTY-SEVEN THOUSAND THREE HUNDRED TWENTY-FIVE DOLLARS ($137,325.00) IN UNITED STATES CURRENCY AND ONE (1) 2006 FORD 500 BEARING VIN #1FAFP24146G171666:  DARRYL JEROME BOBO, II | APPELLANT |

v.

| | |
|---|---|
| STATE OF MISSISSIPPI, EX REL. PELAHATCHIE POLICE DEPARTMENT | APPELLEE |

| | |
|---|---|
| DATE OF JUDGMENT: | 06/18/2015 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DARRYL JEROME BOBO II (PRO SE) |
| ATTORNEYS FOR APPELLEE: | CHRISTOPHER TODD MCALPIN |
| | THOMAS RICHARD MAYFIELD |
| NATURE OF THE CASE: | CIVIL - OTHER |
| TRIAL COURT DISPOSITION: | ORDERED THE FORFEITURE OF THE APPELLANT'S 2006 FORD 500 AND $137,325 IN UNITED STATES CURRENCY |
| DISPOSITION: | AFFIRMED - 11/22/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE GRIFFIS, P.J., BARNES AND CARLTON, JJ.

## CARLTON, J., FOR THE COURT:

¶1.    Pursuant to the Mississippi Uniform Controlled Substances Law, the Rankin County Circuit Court affirmed the forfeiture of Darryl Bobo's 2006 Ford 500 and his $137,325 in United States currency.  *See* Miss. Code Ann. § 41-29-153 (Rev. 2013).  On appeal from the circuit court's judgment, Bobo asserts the following issues:  (1) whether his attorney

provided ineffective assistance of counsel; (2) whether the State unreasonably extended the traffic stop and unlawfully seized his property; (3) whether substantial evidence supported the forfeiture of his property; and (4) whether the forfeiture amounts to an excessive fine.

¶2.    Finding no error, we affirm the circuit court's judgment.

**FACTS**

¶3.    On November 8, 2012, Lieutenant Nick McLendon with the Richland Police Department[1] stopped a 2006 Ford 500 for speeding on Interstate 20.[2]  The vehicle had a South Carolina license plate and was registered to Bobo.  Bobo was not present at the time of the traffic stop.  Instead, Parrish Norfleet was driving the vehicle.

¶4.    Lieutenant McLendon testified that Norfleet said he was a rapper and that he was traveling from Georgia to California to visit family.  Lieutenant McLendon stated that he observed numerous air fresheners inside the vehicle, a small overnight bag on the backseat, and a single key in the ignition.  According to Lieutenant McLendon's testimony, the single key in the ignition and the multiple air fresheners were consistent with vehicles he had previously encountered that were used to smuggle contraband.  While running a check on Norfleet's driver's license and awaiting criminal-history reports for both Norfleet and Bobo,

---

[1] Although the Richland Police Department stopped Bobo's vehicle and seized his property, the Pelahatchie Police Department instituted the actual forfeiture proceeding against the seized property.  The record reflects that the police departments of Richland and Pelahatchie have an interlocal cooperation agreement that allows "each [c]ity [to] share equally in the division of the proceeds of all forfeiture actions resulting from seizures on the United States Interstate Highway System lying and being situated within each municipality. . . ."

[2] The record reflects that the vehicle was driving seventy-three miles per hour in a seventy-mile-per-hour speed zone.

Lieutenant McLendon asked Norfleet's permission to search the vehicle. However, Norfleet refused to consent to a search.

¶5.     Although Norfleet's driver's license appeared to be in order, Lieutenant McLendon testified that the results of the criminal-history reports indicated that Bobo possessed prior narcotics convictions and that Norfleet possessed misdemeanor narcotics violations. After asking Norfleet to exit the vehicle, Lieutenant McLendon deployed his certified K9, Rocky, for a free air sniff. Lieutenant McLendon testified that Rocky jumped inside the vehicle's open passenger window and drew Lieutenant McLendon's attention to the seam of the backseat and the trunk. Following Rocky's alert, Lieutenant McLendon called for backup and informed Norfleet that he would be conducting a probable-cause search of the vehicle.

¶6.     Lieutenant McLendon testified that he found no weapons on Norfleet. However, upon searching the vehicle, Lieutenant McLendon noticed a discrepancy in the depth of the trunk around the spare tire. Inside a concealed compartment, Lieutenant McLendon found five bundles of United States currency wrapped in heat-sealed bags, plastic wrap, and dryer sheets. Lieutenant McLendon also found a bag inside the trunk that contained tools to access the hidden compartment. After finding the compartment and currency, Lieutenant McLendon asked Norfleet to follow him to Richland's narcotics office. Lieutenant McLendon also informed Homeland Security Investigations about the discovery.

¶7.     Once at the narcotics office, Lieutenant McLendon photographed the vehicle's contents and removed the five bundles of currency hidden inside the trunk compartment. Lieutenant McLendon testified that the bundles totaled $137,325 and that Norfleet denied

3

any knowledge of the trunk compartment and the money. Lieutenant McLendon also stated that he found receipts inside the vehicle that documented multiple trips from Georgia to California and showed the vehicle had traveled 98,000 miles in less than a year.

¶8. On November 14, 2012, the State filed a petition against Bobo and Norfleet in the County Court of Rankin County for the forfeiture of the 2006 Ford 500 and the $137,325 in currency. The State's petition claimed that the 2006 Ford 500 was subject to forfeiture as a vehicle "used or intended for use . . . to transport, or in any manner to facilitate the transportation, sale, receipt, possession[,] or concealment of property . . . ." *See* Miss. Code Ann. § 41-29-153(a)(4). The State further asserted that the $137,325 was subject to forfeiture as money "used or intended for use in violation of the Mississippi Uniform Controlled Substances Law." *See* Miss. Code Ann. § 41-29-153(a)(4), (a)(7). Although Bobo filed an answer to the State's petition on December 12, 2012, Norfleet failed to answer or otherwise defend against the State's petition. As a result, on January 7, 2013, the county court entered a default judgment against Norfleet.

¶9. On September 22, 2014, the county court held a hearing on the State's forfeiture petition against Bobo. Following Lieutenant McLendon's testimony, the State offered Staff Sergeant Brad Vincent of the Mississippi Highway Patrol as an expert in the field of drug trafficking and criminal interdiction. Following voir dire, the county court accepted Staff Sergeant Vincent as an expert in the methods, techniques, instrumentalities, procedures, and practices utilized by drug traffickers and couriers in transporting, concealing, and storing drugs and drug proceeds.

4

¶10. Staff Sergeant Vincent testified to the significance of the I-20 corridor where Lieutenant McLendon stopped Norfleet. According to Staff Sergeant Vincent, drugs typically travel eastbound through Mississippi while currency usually travels westbound through the state. Staff Sergeant Vincent further explained that the route Norfleet was driving, from Georgia to California, was consistent with the flow of drugs and currency through the state. When questioned about the significance of the various items Lieutenant McLendon observed and photographed in Bobo's vehicle, Staff Sergeant Vincent testified:

> [T]he significance of a single key in the ignition is that oftentimes these vehicles that are used for transporting narcotics and money are used solely for that purpose, specifically the vehicles that contain these hidden compartments. It's not always the same person driving. Sometimes[,] with certain organizations[,] the vehicles may change hands several times over a period of months, depending on how long the vehicle stays in circulation. So the vehicle doesn't really belong to anybody. It's used for trafficking, so nobody has any . . . personal keys and stuff on these key chains.
>
> Air fresheners are used obviously to mask odors . . . . It's another indicator again in and of itself. It doesn't mean a whole lot, but when you look at the totality of the circumstances[,] it's another indicator.
>
> We're looking at a small backpack in this picture, and again, it goes back to training and experience. And I've known Officer McLendon for a long time[,] and he's got a lot of experience in dealing with the innocent motoring public and how they generally travel, and coast to coast is a very long trip. Some of the questions raised earlier about [Norfleet] having family and stuff in another state and maybe his clothes could be there. Yes, that's a possibility, but that would be [an] expensive way to live, to maintain two different wardrobes at two different houses as opposed to traveling with your clothes. That would be inconsistent with the normal innocent motoring public.
>
> The trash in the vehicle. The vehicle, again, is on the road. We already know that the vehicle has had a lot of miles put on it in a short period of time, so when traveling[,] there[ are] frequent stops for gas. A lot of people buy energy drinks; they eat a lot of fast food. Especially when the vehicle is loaded[,] and it's containing money or it's containing drugs, the drivers rarely

5

like to separate themselves from the vehicle. That's why they don't like to get motels on these trips. That's why they like to drink their energy drinks and sleep in roadside parks so they can maintain control of the vehicle when it's loaded.

¶11. Staff Sergeant Vincent also testified that, in his experience, hidden compartments inside vehicles almost always contain drugs or money. He further stated that the packaging method used for the money found in Bobo's vehicle was consistent with the way drug-trafficking organizations wrap their money for transport. In addition, Staff Sergeant Vincent testified that the amount of mileage accumulated on Bobo's vehicle in under a year was not uncommon for a vehicle used by a drug-trafficking organization to constantly transport drugs and money. Moreover, based on the size and sophistication of the hidden compartment in Bobo's vehicle, Staff Sergeant Vincent testified that he possessed no doubt that the compartment was used to transport drugs. In his expert opinion, Staff Sergeant Vincent concluded that Bobo was involved with drug trafficking and that the money hidden in Bobo's vehicle constituted the proceeds of drug trafficking or was intended to be used in the furtherance of drug trafficking.

¶12. On October 2, 2014, the county court entered an order finding by a preponderance of the evidence that Bobo's seized property was forfeitable under Mississippi's Uniform Controlled Substances Law. As a result, the county court granted the State's petition for the forfeiture of Bobo's seized property to the Pelahatchie Police Department. Bobo then appealed to the circuit court, which entered an order on June 18, 2015, affirming the forfeiture. Aggrieved, Bobo appeals to this Court.

**DISCUSSION**

6

### I. Whether Bobo's attorney provided ineffective assistance of counsel.

¶13. In his first assignment of error, Bobo argues that his attorney, Bernard Jones, provided ineffective assistance of counsel. Based on various alleged errors committed by Jones, Bobo asks this Court to reverse the order of forfeiture.

¶14. In addressing this assignment of error, we acknowledge that the record reflects that Bobo faced no pending criminal charges in the proceedings below and that the State's petition for the forfeiture in rem of Bobo's property constituted a civil action. *See State ex rel. Miss. Bureau of Narcotics v. Lincoln Cty.*, 605 So. 2d 802, 804 (Miss. 1992) (discussing the civil nature of a forfeiture in rem). We also acknowledge that Mississippi's civil forfeiture statutes provide no right to appointed counsel. Miss. Code Ann. § 41-29-101 to -191 (Rev. 2013 & Supp. 2016). In addition, our precedent reflects no right to appointed counsel or to effective assistance of counsel in civil proceedings. *See Goodin v. Dep't of Human Servs.*, 772 So. 2d 1051, 1055 (¶12) (Miss. 2000); *DeMyers v. DeMyers*, 742 So. 2d 1157, 1162 (¶20) (Miss. 1999); *Parker v. Bliven*, 59 So. 3d 619, 621 (¶14) (Miss. Ct. App. 2010).

¶15. The record here reflects that, of his own volition, Bobo hired Jones as his private attorney to represent him in the forfeiture proceeding. The record fails to reflect any claims of indigency made by Bobo or any requests for counsel that he asserted to the circuit court. The record also fails to support Bobo's claim on appeal that his private counsel possessed a conflict of interest. In addition, upon review of this assignment of error, we find nothing in the record to show that Bobo's complained-of errors fell outside the realm of his attorney's

trial strategy. *See Jackson v. State*, 52 So. 3d 1203, 1210 (¶32) (Miss. Ct. App. 2010) (acknowledging that decisions within the ambit of trial strategy fail to give rise to an ineffective-assistance-of-counsel claim). Because the forfeiture in rem of Bobo's property constituted a civil proceeding, and because the right to effective assistance of counsel fails to apply in civil proceedings, we find no merit to this assignment of error.

## II. Whether the State unreasonably extended the traffic stop and unlawfully seized Bobo's property.

¶16. Bobo concedes on appeal that Lieutenant McLendon was justified when he initially stopped Norfleet for speeding. However, Bobo asserts that the State then proceeded to unreasonably extend the traffic stop and to unlawfully seize his property. According to Bobo's argument, the State "detained . . . Norfleet for well over five hours, an unlawful duration, to search . . . Norfleet['s] and [Bobo's] property without any cognizable reasonable suspicion or probable cause."

¶17. "The Fourth Amendment to the United States Constitution and Article 3 Section 23 of the Mississippi Constitution provide that an individual has the right to be free from unreasonable searches and seizures." *Shelton v. State*, 45 So. 3d 1203, 1208 (¶10) (Miss. Ct. App. 2010) (citing *Dies v. State*, 926 So. 2d 910, 917-18 (¶21) (Miss. 2006)). "The action of an officer stopping a vehicle is reasonable when there is 'probable cause to believe that a traffic violation has occurred.'" *Lee v. State*, 100 So. 3d 982, 984-85 (¶9) (Miss. Ct. App. 2012) (quoting *Whren v. United States*, 517 U.S. 806, 810 (1996)). "To stop and temporarily detain is not an arrest, and the cases hold that[,] given reasonable circumstances[,] an officer may stop and detain a person to resolve an ambiguous situation without having sufficient

8

knowledge to justify an arrest." *Gonzales v. State*, 963 So. 2d 1138, 1141 (¶13) (Miss. 2007) (citation omitted). "[I]t is imperative that the facts be judged against an objective standard: Would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?" *Id.* at 1141-42 (¶13) (citations and internal quotation marks omitted).

¶18. As previously stated, Bobo concedes that probable cause existed for Lieutenant McLendon to initially stop and detain Norfleet since Norfleet was speeding. According to Lieutenant McLendon's testimony, during the traffic stop he observed numerous air fresheners inside the vehicle, a small overnight bag on the backseat, and a single key in the vehicle's ignition. Lieutenant McLendon stated that the single key in the ignition and the multiple air fresheners were consistent with indicators he had encountered in other vehicles used to smuggle contraband. Lieutenant McLendon further testified that the results of the criminal-history reports he requested indicated that Bobo possessed prior narcotics convictions and that Norfleet possessed misdemeanor narcotics violations.

¶19. Our caselaw provides that, if, during a proper investigative stop, a police officer "develops reasonable, articulable suspicion of some criminal activity in addition to . . . that initially suspected, the permissible scope of the stop expands to include the officer's investigation of the newly suspected criminal activity." *Tate v. State*, 946 So. 2d 376, 382 (¶18) (Miss. Ct. App. 2006) (citing *United States v. Lee*, 898 F.2d 1034, 1040 (5th Cir. 1990)). After observing the items in Bobo's vehicle and reviewing the criminal-history reports on Bobo and Norfleet, Lieutenant McLendon asked Norfleet to exit the vehicle and

9

deployed his certified K9 for a free air sniff.

¶20. In *Shelton*, this Court recognized that, "[e]ven without reasonable, articulable suspicion, the performance of a dog sniff of the outside of a vehicle by a trained canine during a routine, valid traffic stop is not a violation of one's Fourth Amendment rights against unreasonable searches and seizures." *Shelton*, 45 So. 3d at 1209 (¶15) (quoting *Jaramillo v. State*, 950 So. 2d 1104, 1107 (¶7) (Miss. Ct. App. 2007)). We held in *Shelton* that "the drug-detecting dog's positive alerts created probable cause for the [law-enforcement officer] to search the trunk of the [defendants'] rental car." *Id.* Here, Lieutenant McLendon testified that his certified K9 jumped inside the open passenger window of Bobo's vehicle and alerted Lieutenant McLendon to the seam of the backseat and the trunk. Following the alert, Lieutenant McLendon called for backup and informed Norfleet that he would be conducting a probable-cause search of the vehicle.

¶21. Based on our review of the facts in the record and applicable caselaw, we find no merit to Bobo's claims that Lieutenant McLendon unlawfully extended the traffic stop and illegally seized Bobo's property. As previously discussed, Lieutenant McLendon made a valid traffic stop, and then he acted within his authority when he deployed his trained K9 for a free air sniff outside the vehicle. *See id.* As in *Shelton*, we find that Lieutenant McLendon possessed probable cause to search the trunk of Bobo's vehicle after his K9 alerted to the area. *See id.* We therefore find that this assignment of error lacks merit.

### III. Whether substantial evidence supported the forfeiture of Bobo's property.

¶22. Bobo also contends that substantial evidence failed to support the county court's

10

judgment for the forfeiture of his property. In reviewing this assignment of error, we acknowledge the following:

> Forfeiture statutes are penal in nature and must be strictly construed. In a civil forfeiture case, the question is whether, given all of the evidence taken together, a rational trier of fact could have found that the funds were the product of or the instrumentalities of violations of the State's Uniform Controlled Substances Laws. The trier of fact may act on circumstantial evidence and inferences as well as direct evidence.

*Evans v. City of Aberdeen*, 925 So. 2d 850, 853 (¶11) (Miss. Ct. App. 2005) (internal citations omitted). Our precedent further establishes that "[t]he appropriate standard of review in forfeiture cases is the familiar substantial evidence/clearly erroneous test. [The appellate court] will not disturb a circuit court's findings unless it has applied an erroneous legal standard to decide the question of fact." *Six Thousand Dollars ($6,000) v. State ex rel. Miss. Bureau of Narcotics*, 179 So. 3d 1, 4 (¶4) (Miss. 2015) (citation omitted).

¶23. To support its argument that Bobo's seized property was used or intended for use in violation of the Mississippi Uniform Controlled Substances Law, the State called Lieutenant McLendon and Staff Sergeant Vincent to testify. Both law-enforcement officials testified that the items observed and photographed in Bobo's vehicle at the time of the traffic stop were consistent with items found in vehicles used to smuggle contraband. Staff Sergeant Vincent, testifying as an expert in the field of drug trafficking and criminal interdiction, even presented evidence about the drug-courier profile and explained the relationship each item inside Bobo's vehicle possessed to the drug-courier profile.

¶24. In addition, Staff Sergeant Vincent testified about the significance of the I-20 corridor to the flow of money and drugs through Mississippi. He stated that, in his experience, hidden

11

compartments like the one found inside Bobo's vehicle were almost always used to transport drugs or money. Moreover, taking into account the size and sophistication of the hidden compartment in Bobo's vehicle, the packaging method used for the money found inside the compartment, and the amount of mileage accumulated on Bobo's vehicle in under a year, Staff Sergeant Vincent concluded that Bobo's vehicle was involved with drug trafficking and that the money hidden inside the vehicle was proceeds from or intended for the furtherance of drug trafficking.

¶25. Upon review, we find the record contained substantial evidence to support the county court's judgment for the forfeiture of Bobo's property. *See Six Thousand Dollars*, 179 So. 3d at 4 (¶4). Taking all the evidence and testimony together, "a rational trier of fact could have found that [Bobo's vehicle and the $137,325 in currency] were the product of or the instrumentalities of violations of the State's Uniform Controlled Substances Laws." *Evans*, 925 So. 2d at 853 (¶11) (citation omitted). We therefore find that this argument lacks merit.

## IV. Whether the forfeiture amounts to an excessive fine.

¶26. In his final assignment of error, Bobo contends that the forfeiture of his property amounts to an excessive and grossly disproportionate fine because "no controlled substances were involved in [the traffic] stop."

¶27. Under Mississippi statutory law, vehicles are subject to forfeiture when they "are used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession[,] or concealment of [controlled substances.]" Miss. Code Ann. § 41-29-153(a)(4). In addition, money "used, or intended for use, in violation of [the Mississippi

Uniform Controlled Substances Law]" is also subject to forfeiture. Miss. Code Ann. § 41-

29-153(a)(5). In discussing the forfeiture of seized property, this Court has previously stated:

> Article 3, Section 28 of the Mississippi Constitution prohibits the government
> from imposing excessive fines. Because forfeiture actions are penal in nature,
> the . . . [s]upreme [c]ourt has applied Article 3, Section 28 to them and adopted
> a four-element proportionality test that applies in the context of forfeiture
> proceedings. Those four elements are:
>
>> (1) The nexus between the offense and the property and the
>> extent of the property's role in the offense;
>>
>> (2) The role and culpability of the owner;
>>
>> (3) The possibility of separating the offending property from the
>> remainder; and
>>
>> (4) Whether, after a review of all relevant facts, the forfeiture
>> divests the owner of property which has a value that is grossly
>> disproportionate to the crime or grossly disproportionate to the
>> culpability of the owner.
>
> The supreme court [has further held]:
>
>> The analysis under the proportionality test that we employ here
>> is two-part. First, under the instrumentality (or nexus) test, the
>> forfeited property must have a sufficiently close relationship to
>> the illegal activity. Second, under the proportionality test,
>> forfeiture of the property must not impose upon the owner a
>> penalty grossly disproportionate to his offense.

*One (1) 2011 Chevrolet Silverado 1500 v. Panola Cty. Narcotics Task Force*, 169 So. 3d

967, 970 (¶6) (Miss. Ct. App. 2014) (internal citations and quotation marks omitted).[3]

---

[3] *One (1) Charter Arms, Bulldog 44 Special v. State ex rel. Moore*, 721 So. 2d 620,
624 (¶16) (Miss. 1998) ("The test employed must be one that permits forfeiture of property
from those persons who utilize said property in furtherance of their own criminal activity.
Yet, the test must also be flexible so as not to permit forfeiture where innocent persons will
suffer or where the value of the property is grossly disproportionate to the crime.").

### A. The Instrumentality Test

¶28. As stated, under the first prong of our analysis, we determine whether Bobo's seized property possesses a sufficiently close relationship to drug trafficking to justify forfeiture. *See id.*; *see also One (1) 1979 Ford 15V v. State ex rel. Miss. Bureau of Narcotics*, 721 So. 2d 631, 636 (¶19) (Miss. 1998) ("For forfeiture to be permissible, there must be sufficient nexus between the offense and the property and the extent of the property's role in the offense.").

¶29. In *1979 Ford 15V*, the supreme court found that a sufficient nexus existed between the offense (conspiracy to distribute) and the seized property (a van) to satisfy the instrumentality test. *1979 Ford 15V*, 721 So. 2d at 636 (¶19). In reaching this conclusion, the supreme court stated:

> The crime at issue here is not an isolated case of mere possession of a small quantity of illegal drugs. [The offender] pled guilty to conspiracy to distribute a large amount of cocaine. In furtherance of this conspiracy, [the offender] used the van to facilitate the eventual drug deal, which gives the van a role in the conspiracy. In addition, the van provided a cover for [the offender], as a different vehicle was employed to consummate the sale. The nexus between the property, the van, and the offense, conspiracy to distribute, was sufficiently established[,] and the lower court was not clearly erroneous in its finding that the van should be forfeited.

*Id.*

¶30. In *One (1) Charter Arms, Bulldog 44 Special v. State ex rel. Moore*, 721 So. 2d 620, 625 (¶26) (Miss. 1998), the supreme court also found that an application of the instrumentality test favored forfeiture where a drug offender's vehicle was used to transport the offender "into a known drug area to purchase cocaine, [it] afforded him quick egress

14

from the area, and [it] allowed him a measure of privacy in which to consume his ill-gotten drugs." *Id.* at (¶25). The supreme court further noted that law enforcement "found some drug paraphernalia concealed inside [the offender's] car, and not just on his person." *Id.*

¶31. In the present case, the State presented evidence to the county court to show that Bobo's seized property constituted instrumentalities used in the furtherance of a drug-trafficking operation. First, the record reflects that Lieutenant McLendon discovered a significant amount of United States currency hidden in the trunk of Bobo's vehicle. Lieutenant McLendon testified that he discovered five bundles of currency totaling $137,325. Although Bobo now claims on appeal that the money came from legitimate business interests, the State presented evidence at trial to prove otherwise and to refute Bobo's assertion. Lieutenant McLendon testified that the bundles were wrapped in heat-sealed bags, plastic wrap, and dryer sheets. As Staff Sergeant Vincent later explained during his testimony, this packaging method is consistent with the techniques used by drug-trafficking organizations.

¶32. The State also presented evidence to support its argument that Bobo's vehicle played a role in the furtherance of drug trafficking. Staff Sergeant Vincent's testimony revealed that compartments such as the one concealed in the trunk of Bobo's vehicle often possess a nexus to criminal activity. According to Staff Sergeant Vincent, in his experience, such compartments are almost always used to transport drugs or money. Staff Sergeant Vincent also testified that the size and sophistication of the hidden compartment inside Bobo's vehicle were consistent with that of the compartments used by drug traffickers to conceal and

15

transport contraband.

¶33. In addition, the record reflects that the route Norfleet traveled through Mississippi possessed a connection to drug trafficking. As Staff Sergeant Vincent explained, the I-20 corridor is significant to the flow of money and drugs through the state. Furthermore, the receipts discovered by Lieutenant McLendon indicated that, within the span of a year, the vehicle had made numerous trips between California and Georgia and had amassed 98,000 miles. Based on the size and sophistication of the hidden compartment, the items photographed inside Bobo's vehicle, the packaging of the currency, and the amount of miles amassed on the vehicle in under a year, Staff Sergeant Vincent testified that Bobo's vehicle and the currency fit the profile of property used or intended for use in the furtherance of drug trafficking.

¶34. Upon review, we find the record contains sufficient evidence to show that Bobo's seized property facilitated a violation of the Mississippi Uniform Controlled Substances Law. Thus, like the supreme court's holdings in both *1979 Ford 15V* and *Charter Arms*, we find the instrumentality test favors the forfeiture of Bobo's property. We therefore proceed to a discussion of whether the evidence satisfies the second prong of our analysis.

### B. The Proportionality Test

¶35. Under this prong of our analysis, we determine whether the forfeiture of Bobo's seized property imposes a penalty that is grossly disproportionate to the crime or to Bobo's culpability. *See 2011 Chevrolet Silverado 1500*, 169 So. 3d at 970 (¶6).

¶36. After reviewing both the record and relevant caselaw, we find the forfeiture of Bobo's

16

property failed to result in a fine that was grossly disproportionate to Bobo's culpability. Considering the large sum of money discovered in the hidden compartment of Bobo's vehicle, as well as the testimony of the State's witnesses linking the circumstances of this case to the furtherance of a drug-trafficking operation, we find that substantial evidence supported the forfeiture of Bobo's property.

¶37. **THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**