# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-01034-COA

SIX THOUSAND DOLLARS ($6,000)                                        APPELLANT

v.

STATE OF MISSISSIPPI EX REL. MISSISSIPPI                              APPELLEE
BUREAU OF NARCOTICS

DATE OF JUDGMENT:            02/13/2013
TRIAL JUDGE:                 HON. ANTHONY ALAN MOZINGO
COURT FROM WHICH APPEALED:   JEFFERSON DAVIS COUNTY CIRCUIT
                             COURT
ATTORNEY FOR APPELLANT:      THOMAS P. WELCH JR.
ATTORNEY FOR APPELLEE:       JACKIE RAY BOST II
NATURE OF THE CASE:          CIVIL - OTHER
TRIAL COURT DISPOSITION:     CURRENCY FORFEITED
DISPOSITION:                 AFFIRMED - 09/30/2014
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., ISHEE AND JAMES, JJ.**

**JAMES, J., FOR THE COURT:**

¶1. Anthony Brown filed a petition in the Circuit Court of Jefferson Davis County contesting the forfeiture of six thousand dollars ($6,000)[1] seized by the Mississippi Bureau of Narcotics (MBN). Following a bench trial, the trial court entered an order of forfeiture finding that the currency was used, or was intended for use, in violation of Mississippi's Uniform Controlled Substances Law, and that Brown failed to prove innocent ownership of the currency. Brown appeals. Finding no error, we affirm.

---

[1] Except when necessary to do otherwise, hereafter, the $6,000, which was the subject of the forfeiture, will be referred to as "the currency."

**FACTS**

¶2.    On January 22, 2012, John Norman Cole was arrested after he failed to stop at a driver's license checkpoint that was being conducted by law enforcement officers at the intersection of Highway 84 and Clem Road in Jefferson Davis County, Mississippi. After a short police pursuit, Cole crashed his Toyota Camry into the rear of a trailer approximately five miles from the checkpoint. Cole fled the accident scene on foot, but was apprehended by Mississippi Highway Safety Patrol Trooper Stephen Smith some two hundred yards from the crash site. Upon apprehending Cole, Trooper Smith discovered a roll of money, secured by a rubber band, and a clear plastic bag containing a white powdery substance on the ground in the immediate area of Cole's arrest. It was later determined that the roll of money contained $6,000, and that the white powdery substance was cocaine. Trooper Smith then canvassed the area between the vehicle and the place where Cole was apprehended and found a plastic bag containing a green leafy substance, later determined to be marijuana. Due to the presence of the suspected narcotics and associated currency, MBN Agent Heather Sullivan was called to the scene. Pursuant to the provisions of the Uniform Controlled Substances Law, Agent Sullivan seized the currency and MBN sought forfeiture of the currency.

¶3.    On July 10, 2012, Brown filed a petition to contest the forfeiture of the currency, claiming an ownership interest in the currency and asserting that the currency was illegally seized by MBN. MBN filed a response and counterclaim for forfeiture. On January 2, 2013, MBN responded to Brown's discovery requests. In its responses, MBN identified Agent Sullivan and Keith McMahan, a forensic scientist with the Mississippi Crime Laboratory, as

2

witnesses; stated that MBN did not anticipate designating an expert witness "at this time"; and produced a certified crime-lab report from the Mississippi Crime Laboratory signed by McMahan. The report reflected the results of a drug analysis conducted by McMahan, which confirmed that the substances seized from Cole were in fact illegal narcotics.

¶4.     According to Brown, on January 14, 2013, the date of trial, MBN requested, and was granted, a continuance due to the unavailability of an expert witness.[2] The trial was reset for February 4, 2013.[3]     On January 22, 2013, thirteen days before trial, MBN filed a notice designating Agent Sullivan and McMahan as expert witnesses. Trial was held on February 4, 2013. Brown objected to the expert testimony of Agent Sullivan and McMahan, asserting that the expert witnesses were not timely designated. The trial court overruled Brown's objection.

¶5.     Brown testified that he owned the currency seized from Cole. Brown testified that the source of the currency was a settlement agreement reached with his employer for a back injury Brown sustained in 2009 while working in Vicksburg, Mississippi. In June 2012, Brown's employer's insurance carrier issued two settlement checks, totaling approximately $50,000 to Brown. The checks were issued by Bank of America. According to Brown, upon receiving the checks, he personally traveled from his home in Brookhaven, Mississippi, to

---

[2] In his brief before this Court, Brown asserts that the original trial date was set for January 14, 2013, and that MBN was granted a continuance on that day. However, we note that these facts are not reflected in the record. The record does not contain an order setting the trial for January 14, 2013, or an order granting MBN a continuance. Nor has this Court been provided with a transcript of the proceedings that took place on January 14, 2013.

[3] Again, the record does not contain an order resetting the trial for February 4, 2013; however, the record reflects that the trial did in fact take place on that day.

3

the Bank of America branch in Pensacola, Florida, in order to cash the checks.[4] Brown testified that, upon returning to Brookhaven, he kept the settlement money in a safe inside his home. Shortly thereafter, Brown traveled to Slidell, Louisiana, to purchase a vehicle that he found on the internet.

¶6. Brown testified that he found another vehicle, a Monte Carlo SS, on the internet for sale in Hattiesburg, Mississippi. After one telephone conversation with the owner of the Monte Carlo, Brown decided to purchase the vehicle without ever seeing the vehicle. On June 22, 2012, Brown gave Cole $6,000 so that Cole could travel to Hattiesburg to deliver the money to Brown's cousin so that the cousin could purchase the vehicle for him. However, Brown testified that after giving Cole the money, his cousin contacted him and told him that he inspected the vehicle, and advised Brown against the purchase. Brown claimed he then called Cole and told him to bring the money back to him. According to Brown, Cole was en route to Brookhaven to return the money when he was arrested.

¶7. Trooper Smith testified to his role in Cole's arrest and the recovery of the illegal narcotics and the currency. Agent Sullivan testified that, based on her training and experience, the currency, which was "rolled up in a ball in a rubber and . . . and located in close proximity to drug evidence," was "drug money." Agent Sullivan further testified that she interviewed Cole on two occasions following his arrest and, on both occasions, Cole denied having any knowledge about the money. Finally, McMahan testified to the findings of the drug analysis he performed on the evidence recovered from Cole. McMahan testified

---

[4] According to Brown, the closest Bank of America, the bank on which the settlement checks were drawn, is located in Pensacola.

4

that submission one contained 1.7 grams of marijuana and that submission two contained 21.4 grams of cocaine.

¶8.     At the conclusion of trial, the trial court entered an order of forfeiture, finding that MBN had proved, by a preponderance of the evidence, that the currency in question was used, or intended for use, in violation of the Uniform Controlled Substances Law and that Brown's assertion that he was an innocent owner of the currency lacked credibility. Brown filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial, which the trial court denied by an order entered May 11, 2013. Brown appeals, raising the following issues: (1) whether the trial court abused its discretion by permitting the testimony of untimely designated expert witnesses; (2) whether the verdict was against the overwhelming weight of the evidence.

**DISCUSSION**

I.     **Whether the trial court abused its discretion by permitting the testimony of untimely designated expert witnesses.**

¶9.     Brown first argues that MBN's designation of Agent Sullivan and McMahan was untimely and that the trial court erred in permitting the expert testimony. As noted above, both Agent Sullivan and McMahan were first identified as fact witnesses by MBN in MBN's responses to discovery on January 2, 2013. On January 22, 2013, MBN designated Agent Sullivan and McMahan as expert witnesses. According to Brown, the trial court permitted the expert testimony in violation of Uniform Rule of Circuit and County Court 4.04, which Brown argues necessitates reversal. We disagree.

¶10.    Our standard of review for a trial court's admission or suppression of evidence is abuse of discretion. *Cowan v. Miss. Bureau of Narcotics*, 2 So. 3d 759, 763 (¶13) (Miss. Ct. App. 2009). Furthermore, "[t]he admission of expert testimony is addressed to the sound discretion of the trial judge." *Id.* (quoting *Roberts v. Grafe Auto Co.*, 701 So. 2d 1093, 1098 (Miss. 1997)).

¶11.    The testimony of witnesses is generally governed by Mississippi Rules of Evidence 701 and 702. Rule 701 provides:

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to the clear understanding of the testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Likewise, Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In addition, the Mississippi Supreme Court has held:

> It is important that we not blur the distinction between Rules 701 and 702, not so much for admissibility, as for notice and opportunity to prepare rebuttal. Expert testimony and opinions are subject to special discovery rules in both the civil and criminal arenas. This Court has also adopted a policy which dictates that [expert] witnesses be offered as such before offering [expert] testimony. This policy allows the opposing party ample opportunity to challenge the witness's qualifications to render such [an] opinion before the question soliciting [the] opinion is posed in front of the [court].

6

*Sample v. State*, 643 So. 2d 524, 530 (Miss. 1994) (internal citation omitted); *see also Ramos v. State*, 710 So. 2d 380, 387 (¶36) (Miss. 1998).

¶12.     At issue here is notice in compliance with Rule 4.04A of the Uniform Rules of Circuit and County Court.  Rule 4.04A states that, "[a]bsent special circumstances, the court will not allow testimony at trial of an expert witness who was not designated as an expert witness to all attorneys of record at least sixty days before trial."  It is undisputed that the experts were not designated sixty days prior to trial.  Trial was held on February 4, 2013.  Agent Sullivan and McMahan were identified as material witnesses in MBN's discovery responses on January 2, 2013; however, MBN did not designate Agent Sullivan and McMahan as experts until January 22, 2013.

### A.     Waiver

¶13.     *Box v. State*, 437 So. 2d 19 (Miss. 1983), and its progeny provide guidelines for trial judges in dealing with discovery violations.  *See Box*, 437 So. 2d at 23 (Robertson, J., specially concurring).  When faced with a discovery violation, the trial court should adhere the following procedure:

> 1) Upon defense objection, the trial court should give the defendant a reasonable opportunity to become familiar with the undisclosed evidence by interviewing the witness, inspecting the physical evidence, etc.
>
> 2) If, after this opportunity for familiarization, the defendant believes he may be prejudiced by lack of opportunity to prepare to meet the evidence, he must request a continuance.  Failure to do so constitutes a waiver of the issue.
>
> 3) If the defendant does request a continuance the State may choose to proceed with trial and forego using the undisclosed evidence.  If the State is not willing to proceed without the evidence, the trial court must grant the requested continuance.

*Roberson v. State*, 595 So. 2d 1310, 1316 (Miss. 1992) (quoting *Cole v. State*, 525 So. 2d 365, 367 (Miss. 1987)).

¶14.    On the morning of trial, Brown, noting that he had received notice of the expert designations two weeks prior to trial, in violation of Rule 4.04A, stated: "So I am just objecting to any expert testimony elicited from either [designated expert witness]." At no time did Brown request a continuance. Thus, we find Brown waived this issue.

### B.    Special Circumstances

¶15.    As noted above, the admission of expert testimony is addressed to the sound discretion of the trial judge. Furthermore, Rule 4.04 permits untimely designation in special circumstances. "The purpose of the discovery rules promulgated by the Mississippi Supreme Court is that parties might 'avoid trial by ambush' and have 'a reasonable time to prepare for trial.'" *APAC Miss. Inc. v. Johnson*, 15 So. 3d 465, 473 (¶17) (Miss. Ct. App. 2009) (quoting *Congleton v. Shellfish Culture Inc.*, 807 So. 2d 492, 496 (¶12) (Miss. Ct. App. 2002)). This is not a situation where one party is victim to unfair surprise or trial by ambush. In MBN's discovery responses, MBN identified both Agent Sullivan and McMahan as witnesses, identified the subject matter of each witness's testimony, and produced the crime-lab report generated by McMahan; thus, Brown knew that MBN was likely to call these witnesses and had in his possession the crime-lab report that was the subject matter of McMahan's testimony. *Compare APAC*, 15 So. 3d at 475 (¶23)  (no abuse of discretion for failing to grant a continuance due to the plaintiff's untimely designation of expert witnesses where witnesses were disclosed during discovery, although not as experts, and merely testified to information contained in medical records disclosed during discovery), *and Int'l Paper Co.*

*v. Townsend*, 961 So. 2d 741, 757 (¶34) (Miss. Ct. App. 2007) (trial court abused its discretion in a negligence action by failing to grant a continuance due to the plaintiff's untimely designation of an expert witness, where the expert was designated one month prior to trial and the expert's testimony added a third theory of liability and had the effect of causing severe prejudice to the defense).

¶16.    Furthermore, the trial court found that special circumstances were present to permit the admission of the testimony, stating:

> If this were a jury trial or a fact[-]finder besides the Court, I think it would be a tougher issue.  But . . . I think it's a technical argument that they weren't designated . . . but that they were known to be fact witnesses.  And I'll take it for what it's worth and their opinion for what it's worth.

Thus, the trial court noted that special circumstances were present and stated that it would give the appropriate weight to each witness's testimony.

¶17.    "Sanctions are not to be imposed per se for every discovery violation, and a determination of whether to impose such a sanction is ordinarily vested in the sound discretion of the trial judge."  *APAC*, 15 So. 3d at 475 (¶24) (quoting *Ladner v. Ladner*, 436 So. 2d 1366, 1371 (Miss. 1983)).  Under the circumstances here, we do not find an abuse of discretion in the trial court's failure to grant Brown's objection to any expert testimony and permitting Agent Sullivan and McMahan to testify.  Also, as stated above, Brown did not request a continuance.  Accordingly, this issue is without merit.

   **II.    Whether the verdict was against the overwhelming weight of the evidence**.

¶18.    Brown next argues that MBN failed to prove that the seized currency was in close proximity to narcotics.  Particularly, Brown argues that although McMahan, MBN's expert,

testified as to the results of the drug analysis he performed at the State Crime Laboratory, MBN failed to introduce the alleged narcotics into evidence. Brown then argues that the State failed to prove that Brown was not an innocent owner of the currency.

¶19. "The appropriate standard of review in forfeiture cases is the familiar substantial evidence/clearly erroneous test." *Four Thousand Eight Hundred One Dollars v. Lafayette Cnty. Metro Narcotics Unit*, 22 So. 3d 394, 396 (¶6) (Miss. Ct. App. 2009) (quoting *Galloway v. City of New Albany*, 735 So. 2d 407, 410 (¶15) (Miss. 1999)). This Court will "not disturb a circuit court's findings unless it has applied an erroneous legal standard to decide the question of fact." *Id.* In addition, "[w]e remain mindful of the fact that forfeiture statutes are penal in nature and must be strictly construed." *Id.* (quoting *Evans v. City of Aberdeen*, 926 So. 2d 181, 183 (¶5) (Miss. 2006)). Finally, "[t]he trier of fact may act on circumstantial evidence and inferences as well as direct evidence." *Twenty Thousand Eight Hundred Dollars ($20,800.00) in U.S. Currency v. State ex rel. Miss. Bureau of Narcotics*, 115 So. 3d 137, 141 (¶21) (Miss. Ct. App. 2013) (quoting *Evans*, 926 So. 2d at 183 (¶5)).

¶20. The Mississippi Controlled Substances Law is codified in Mississippi Code Annotated sections 41-29-101 through -191 (Rev. 2013). Pursuant to section 41-29-179, if the owner of property has filed an answer denying that property is subject to forfeiture, "the burden is on the petitioner to prove that the property is subject to forfeiture. . . . The standard of proof placed upon the petitioner. . . . shall be by a preponderance of the evidence." Miss. Code Ann. § 41-29-179(2) (Rev. 2013). Section 41-29-153 identifies property subject to civil forfeiture; particularly, section 41-29-153(a)(7) provides: "All monies, coin[,] and currency found in close proximity to forfeitable controlled substances . . . are presumed to be

10

forfeitable . . . ; the burden of proof is upon claimants of the property to rebut this presumption." Miss. Code Ann. § 41-29-153(a)(7) (Rev. 2013).

¶21.   Thus, MBN was required to prove, by a preponderance of the evidence, that the currency was found in close proximity to controlled substances in order to raise the presumption that the currency was forfeitable. The burden of proof then shifted to Brown to rebut that presumption by establishing that he was an innocent owner of the $6,000.

### A.   Close Proximity

¶22.   Brown argues that MBN failed to prove, by a preponderance of the evidence, that the currency was found in close proximity to controlled substances because MBN failed to introduce the controlled substances into evidence. We disagree and find that MBN offered sufficient proof that the currency was found in close proximity to controlled substances.

¶23.   As noted above, the burden of proof in forfeiture cases is by a preponderance of the evidence, and the trier of fact "may act on circumstantial evidence and inferences as well as direct evidence." *Twenty Thousand Eight Hundred Dollars*, 115 So. 3d at 141 (¶21). Here, Trooper Smith testified that he recovered the roll of currency in the immediate area of Cole's arrest. Trooper Smith stated that he recovered a plastic bag containing a white powdery substance approximately five feet from the location of Cole's arrest. Trooper Smith further testified that he discovered a plastic bag containing a green leafy substance twenty feet from the point of Cole's arrest, along Cole's attempted escape route. Trooper Smith testified that he believed that Cole was in possession of each item when he fled his vehicle in an attempt to elude police. Agent Sullivan testified that she took custody of the alleged narcotics and transported them to the State Crime Laboratory for analysis. Finally, McMahan testified that

11

the analysis that he performed on the evidence revealed that submission one contained 1.7 grams of marijuana and submission two contained 21.4 grams of cocaine.

¶24.    We find that MBN presented sufficient evidence establishing that the substances discovered during Cole's arrest were controlled substances; therefore, we find that the trial court was not clearly erroneous when it found that MBN proved, by a preponderance of the evidence, that the currency was found in close proximity to controlled substances. Accordingly, this issue is without merit.

### B.    Rebuttal of the Proximity Presumption

¶25.    Section 41-29-153(a)(7)(A) establishes an "innocent-owner" defense to forfeiture, providing: "No property shall be forfeited . . . to the extent of the interest of an owner, by reason of any act or omission established by him to have been committed or omitted without his knowledge or consent." Thus, a person raising the innocent-owner defense  pursuant to section 41-29-153(a)(7)(A) must: (1) have an ownership interest in the property, and (2) demonstrate that the illegal activity was committed without his knowledge or consent.

¶26.    Brown argues that MBN failed to prove that he was not an innocent owner of the currency and that the trial court erred in ordering the currency forfeited. However, as discussed above, once the presumption was raised that the currency was forfeitable, the burden shifted to Brown to rebut the presumption.

¶27.    In support of his argument that MBN had the burden of proving that he was not an innocent owner of the currency, Brown cites to *Galloway v. City of New Albany*, 735 So. 2d 407, 411 (¶23) (Miss. 1999), in which the Mississippi Supreme Court held: "Where . . . an owner of property files a verified answer denying that property is subject to forfeiture, the

12

burden is on the State . . . . Necessarily the State must demonstrate, by a preponderance of the evidence, that the owner had knowledge of or consented to the illegal use of his property for drug-related activities." However the property at issue in that case was a seized vehicle, and there was no question as to the vehicle's ownership. As the Mississippi Supreme Court held in *One Ford Mustang Convertible v. State ex rel. Clay County Sheriff's Department*, 676 So. 2d 905, 907 (Miss. 1996), "the definition of owner in the Mississippi Motor Vehicle Title Law establishes a prima facie case of ownership. This presumption . . . is rebuttable. The references to owner within the forfeiture statutes indicate that property interests must be not only legal but 'bona-fide.'" Thus, in *Galloway*, the claimant was able to establish a prima facie case of ownership in the vehicle.

¶28. We have held that "[w]hen [a] trial judge sits as the finder of fact, he has the sole authority for determining the credibility of witnesses." *Twenty Thousand Eight Hundred Dollars*, 115 So. 3d at 143 (¶26) (quoting *Yarbrough v. Camphor*, 645 So. 2d 867, 869 (Miss. 1994)). Upon review, "a circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor, and his findings will not be reversed on appeal where they are supported by substantial, credible, and reasonable evidence." *Id.*

¶29. Unlike the claimant in *Galloway*, Brown failed to make a prima facie case that he possessed an ownership interest in the seized currency. The only evidence, aside from evidence documenting his back-injury settlement, that Brown produced in support of his claim was his own testimony, which the trial court found not to be credible. The trial court found that Brown was extremely careful with money. Brown traveled to Pensacola to cash his settlement checks in order to avoid the delay that would result from cashing the checks

13

at a local bank. Upon returning to Brookhaven, Brown purchased a safe in which to store his money and kept the safe in his home. Brown then personally traveled to Slidell to purchase a vehicle. Brown testified that he entrusted Cole with $6,000 so that Cole could travel to Hattiesburg to deliver the money to his cousin so his cousin could purchase a vehicle for Brown. However, Brown provided few details pertaining to the alleged transaction. Brown stated that he found the vehicle on the internet, but could not recall on which website. Brown could not remember the name of the individual selling the vehicle, the model year, or the asking price. Further, Brown could not remember Cole's telephone number, his cousin's telephone number, or even his own telephone number at the time of the alleged transaction. As the trial court stated:

> [I]t does not make sense to the Court that [Brown] would entrust $6,000 . . . to a person without any kind reflection [sic] of the entrustment whatsoever. It doesn't make sense . . . that [Brown] doesn't remember [Cole's] telephone number, doesn't remember any salesperson's name about a vehicle, . . . [and does not] remember any dates.
>
> . . . .
>
> It is not credible . . . that a claimant would assert ownership of this sum of cash, yet have no better recollection or proof that he was not involved . . . with Mr. Cole in some . . . alleged illegal activity.

¶30. We find that the trial court, sitting as the fact-finder, properly considered the evidence and testimony, including the credibility of Brown, and that the trial court's findings that the currency was found in close proximity to controlled substances and that Brown failed to rebut the presumption that the currency was subject to forfeiture were supported by substantial, credible, and reasonable evidence. Accordingly, this issue is without merit.

¶31. **THE JUDGMENT OF THE CIRCUIT COURT OF JEFFERSON DAVIS**

14

**COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT**.

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**