# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CT-01034-SCT

*SIX THOUSAND DOLLARS ($6,000)*

*v.*

*STATE OF MISSISSIPPI EX REL. MISSISSIPPI*
*BUREAU OF NARCOTICS*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 02/13/2013 |
| TRIAL JUDGE: | HON. ANTHONY ALAN MOZINGO |
| COURT FROM WHICH APPEALED: | JEFFERSON DAVIS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS P. WELCH, JR. |
| ATTORNEY FOR APPELLEE: | SENICA MANUEL TUBWELL |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 08/27/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KING, JUSTICE, FOR THE COURT:**

¶1.     After failing to stop at a checkpoint in Jefferson Davis County, John Cole attempted to evade law-enforcement officers before subsequently crashing into a trailer. Cole ran on foot into the nearby woods and was shortly detained. A search of the area produced $6,000 in cash, which the Mississippi Bureau of Narcotics (MBN) claimed was found in close proximity to controlled substances. The MBN sought forfeiture of the property, and Anthony Brown filed a petition to contest. Brown contended that he was an innocent owner of the cash and that forfeiture was therefore improper. We affirm the judgment of the Court of Appeals

as to forfeiture and find that Brown's claim fails by default for lack of proof of an ownership interest in the property.

## FACTS AND PROCEDURAL HISTORY

¶2.     The facts are taken directly from the Court of Appeals opinion:

On January 22, 2012, John Norman Cole was arrested after he failed to stop at a driver's license checkpoint that was being conducted by law enforcement officers at the intersection of Highway 84 and Clem Road in Jefferson Davis County, Mississippi. After a short police pursuit, Cole crashed his Toyota Camry into the rear of a trailer approximately five miles from the checkpoint. Cole fled the accident scene on foot, but was apprehended by Mississippi Highway Safety Patrol Trooper Stephen Smith some two hundred yards from the crash site. Upon apprehending Cole, Trooper Smith discovered a roll of money, secured by a rubber band, and a clear plastic bag containing a white powdery substance on the ground in the immediate area of Cole's arrest. It was later determined that the roll of money contained $6,000, and that the white powdery substance was cocaine. Trooper Smith then canvassed the area between the vehicle and the place where Cole was apprehended and found a plastic bag containing a green leafy substance, later determined to be marijuana. Due to the presence of the suspected narcotics and associated currency, MBN Agent Heather Sullivan was called to the scene. Pursuant to the provisions of the Uniform Controlled Substances Law, Agent Sullivan seized the currency and MBN sought forfeiture of the currency.

On July 10, 2012, [Anthony] Brown filed a petition to contest the forfeiture of the currency, claiming an ownership interest in the currency and asserting that the currency was illegally seized by MBN. MBN filed a response and counterclaim for forfeiture. On January 2, 2013, MBN responded to Brown's discovery requests. In its responses, MBN identified Agent Sullivan and Keith McMahan, a forensic scientist with the Mississippi Crime Laboratory, as witnesses; stated that MBN did not anticipate designating an expert witness "at this time"; and produced a certified crime-lab report from the Mississippi Crime Laboratory signed by McMahan. The report reflected the results of a drug analysis conducted by McMahan, which confirmed that the substances seized from Cole were in fact illegal narcotics.

According to Brown, on January 14, 2013, the date of trial, MBN requested, and was granted, a continuance due to the unavailability of an expert witness. The trial was reset for February 4, 2013. On January 22, 2013, thirteen days before trial, MBN filed a notice designating Agent Sullivan and McMahan as expert witnesses. Trial was held on February 4, 2013. Brown

2

objected to the expert testimony of Agent Sullivan and McMahan, asserting that the expert witnesses were not timely designated. The trial court overruled Brown's objection.

Brown testified that he owned the currency seized from Cole. Brown testified that the source of the currency was a settlement agreement reached with his employer for a back injury Brown sustained in 2009 while working in Vicksburg, Mississippi. In June 2012, Brown's employer's insurance carrier issued two settlement checks, totaling approximately $50,000 to Brown. The checks were issued by Bank of America. According to Brown, upon receiving the checks, he personally traveled from his home in Brookhaven, Mississippi, to the Bank of America branch in Pensacola, Florida, in order to cash the checks. Brown testified that, upon returning to Brookhaven, he kept the settlement money in a safe inside his home. Shortly thereafter, Brown traveled to Slidell, Louisiana, to purchase a vehicle that he found on the internet.

Brown testified that he found another vehicle, a Monte Carlo SS, on the internet for sale in Hattiesburg, Mississippi. After one telephone conversation with the owner of the Monte Carlo, Brown decided to purchase the vehicle without ever seeing the vehicle. On June 22, 2012, Brown gave Cole $6,000 so that Cole could travel to Hattiesburg to deliver the money to Brown's cousin so that the cousin could purchase the vehicle for him. However, Brown testified that after giving Cole the money, his cousin contacted him and told him that he inspected the vehicle, and advised Brown against the purchase. Brown claimed he then called Cole and told him to bring the money back to him. According to Brown, Cole was en route to Brookhaven to return the money when he was arrested.

Trooper Smith testified to his role in Cole's arrest and the recovery of the illegal narcotics and the currency. Agent Sullivan testified that, based on her training and experience, the currency, which was "rolled up in a ball in a rubber and . . . and located in close proximity to drug evidence," was "drug money." Agent Sullivan further testified that she interviewed Cole on two occasions following his arrest and, on both occasions, Cole denied having any knowledge about the money. Finally, McMahan testified to the findings of the drug analysis he performed on the evidence recovered from Cole. McMahan testified that submission one contained 1.7 grams of marijuana and that submission two contained 21.4 grams of cocaine.

At the conclusion of trial, the trial court entered an order of forfeiture, finding that MBN had proved, by a preponderance of the evidence, that the currency in question was used, or intended for use, in violation of the Uniform Controlled Substances Law and that Brown's assertion that he was an innocent owner of the currency lacked credibility. Brown filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial, which the trial court denied by an order entered May 11, 2013. Brown appeals, raising the

following issues: (1) whether the trial court abused its discretion by permitting the testimony of untimely designated expert witnesses; (2) whether the verdict was against the overwhelming weight of the evidence.

*Six Thousand Dollars v. State ex rel. Mississippi Bureau of Narcotics*, 2014 WL 4814873, No. 2013-CA-01034-COA (Miss. Ct. App. Sept. 30, 2014). The Court of Appeals affirmed the judgment of the trial court and held that the lower court did not abuse its discretion in permitting Agent Sullivan and McMahan to testify. The Court of Appeals also held that the trial court did not err in determining that the currency was in close proximity to controlled substances and that Brown had failed to rebut the presumption that the currency was subject to forfeiture.

¶3.     Brown filed a petition for writ of certiorari, raising two issues:

I.  Whether the Court of Appeals erred in finding the verdict was not against the overwhelming weight of the evidence; and

II.  Whether the Court of Appeals erred in affirming the trial court's decision to permit expert testimony.

**ANALYSIS**

¶4.     "The appropriate standard of review in forfeiture cases is the familiar substantial evidence/clearly erroneous test. This Court will not disturb a circuit court's findings unless it has applied an erroneous legal standard to decide the question of fact." *Galloway v. City of New Albany*, 735 So. 2d 407, 410 (Miss. 1999) (citations omitted).

**A. Ownership**

¶5.     Under the forfeiture statute, "[a]ll monies, coin and currency found in close proximity

4

to forfeitable controlled substances . . . are presumed to be forfeitable under this paragraph; the burden of proof is upon claimants of the property to rebut this presumption." Miss. Code Ann. 41-29-153(a)(7) (Rev. 2005). The Legislature provided for an innocent-owner exception to subsection (a)(7), which states that property under subsection (a)(7) shall not be forfeited if an owner has no knowledge of the act committed.[1] Brown contested the forfeiture of $6,000 under the innocent-owner exception, claiming that the money was seized illegally by the MBN.

¶6.     The Court of Appeals affirmed the judgment of the trial court and reasoned that Brown had failed to establish a prima facie case that he possessed an ownership interest in the property. It is clear that, under the innocent-owner exception to the forfeiture statute, the third party contesting forfeiture must first prove an ownership interest in the seized property. In the majority of cases contesting forfeiture under this exception, ownership of the property, or an ownership interest in the property, is clear through title, deed, or possession. Here, Brown claims ownership of currency that was seized from a location where he was not present. Brown argues that no evidence was put forth that the seized currency did not belong to him, yet it is Brown's burden to prove an ownership interest in the property. Brown testified that he found on the internet a car for sale in Hattiesburg that he wanted to purchase, but did not recall on what website the car was for sale. Brown could not recall the seller of

---

[1]"No property shall be forfeited under the provisions of subsection (a)(7) of this section, to the extent of the interest of an owner, by reason of any act or omission established by him to have been committed or omitted without his knowledge or consent." Miss. Code Ann. 41-29-153(a)(7)(A) (Rev. 2005).

the vehicle, the exact year of the vehicle, or how much the seller was asking for the vehicle. Brown merely testified, without corroboration, that he gave Cole $6,000 in cash to purchase a vehicle in Hattiesburg. Brown's testimony is the only link he established to the currency found in Jefferson Davis County. While Brown did provide evidence that he received a settlement for a back injury in the amount of $40,861.13 shortly before the currency was seized, Brown showed no causal link between the settlement money and the seized cash presumably dropped by Cole. Additionally, Agent Sullivan testified that Cole, when questioned about the $6,000, repeatedly stated he did not know anything about any money. Cole also refused to sign a notice of seizure document. Thus, again, the only link connecting Brown to the defendant currency was Brown's own testimony.

¶7.     In fact, Brown did not even satisfy the standing requirement to bring his claim. Brown had standing to contest the forfeiture only if Brown showed that he qualified as an innocent owner. The "claimant opposing forfeiture bears the burden of establishing standing." *United States v. 2004 Ferrari 360 Modeno*, 902 F. Supp. 2d 944, 951 (S.D. Tex. 2012), *aff'd*, 544 F. App'x 545 (5th Cir. 2013) (citations omitted). "A claimant in a forfeiture action need not prove the merit of her underlying claim, but she must be able to show at least a facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement and prudential considerations defining and limiting the role of the court." *Id.* (citing *United States v. $9,041,598.68*, 163 F. 3d 238, 245 (5th Cir. 1998); *18th Century Colombian Monstrance*, 797 F. 2d 1370, 1374-75 (1986)). "It is clear that to have standing to contest a forfeiture a party must have at least some property interest in the subject matter of the

6

condemnation proceeding." ***McFarley v. State***, 602 S. E. 2d 341, 342 (Ga. 2004).

¶8.     Brown argues that he essentially is being punished for not being present when the currency was seized. The innocent-owner exception to the forfeiture statute does not require actual presence at the time of seizure, but it does require the claimant to satisfy standing. Before a claimant can proceed to the merits of his claim, the claimant must at least provide evidence of an ownership interest in the defendant property. Otherwise, any individual could claim an ownership interest in the seized property and, without establishing a credible nexus to the property, require the State to prove the claimant false. This Court reasoned, in looking at the title owner of a vehicle, that "[a] failure to look beyond bare legal title would foster manipulation of nominal ownership to frustrate [the intent of the forfeiture statutes]." ***One Ford Mustang Convertible***, 676 So. 2d 905, 907 (Miss. 1996) (quoting ***United States v. Premises Known as 526 Liscum Drive, Dayton, Montgomery County, Ohio***, 866 F.2d 213, 217 (6th Cir. 1989)). The same reasoning applies in this case. Brown's sole link to the currency found in Jefferson Davis County was his own testimony, which the trial court found lacked credibility. Without proof that Brown was the actual owner of, or even had an ownership interest in, the specific defendant currency, Brown's claim, by default, must fail.

### B. Designation of Experts

¶9.     Under Uniform Circuit and County Court Rule 4.04, absent special circumstances, expert witnesses must be designated by all attorneys of record at least sixty days before trial. On November 12, 2012, Brown propounded discovery requests, asking for the designation of expert witnesses whom the MBN intended to call at trial. The MBN answered on

7

December 12, 2012, and stated that no expert witnesses were expected at that time. The MBN designated Agents Heather Sullivan and Keith McMahan as fact witnesses on January 2, 2013. It was not until January 22, 2013, thirteen days before trial, that the MBN designated Agents Sullivan and McMahan as expert witnesses.

¶10.    Before trial began, Brown objected to any expert testimony. The MBN argued that special circumstances existed for the untimely designations, because both Agents McMahan and Sullivan were identified as fact witnesses and because their testimony was identified in responses to discovery. The trial court agreed and allowed both experts to testify. The Court of Appeals affirmed the trial court's decision and reasoned that Brown was not a victim of unfair surprise or trial by ambush, because both Agent Sullivan and McMahan were identified as fact witnesses.

¶11.    Rule 4.04 is clear that experts must be designated at least sixty days before trial unless special circumstances exist. "It is error for an expert witness to testify when he was not properly designated as an expert, and the opposing side had asked for this information in discovery." *Mississippi Dep't of Wildlife, Fisheries and Parks v. Brannon*, 943 So. 2d 53, 61 (Miss. Ct. App. 2006) (citing *City of Jackson v. Perry*, 764 So. 2d 373, 384 (Miss. 2000). *See also Banks v. Hill*, 978 So. 2d 663 (Miss. 2008) (stating concerns that a plaintiff would not designate experts if she were allowed to argue successfully that experts were not designated because experts were not expected to be called); *Bowie v. Monfort Jones Mem'l Hosp.*, 861 So. 2d 1037 (Miss. 2003) ("[L]itigants must understand that there is an obligation to timely comply with the orders of our trial courts.").

¶12. In *Johnson*, the plaintiff argued that special circumstances existed for his untimely designation of an expert, because the date that the trial was set left a two-week period before Rule 4.04 required disclosure. *Johnson v. Lee*, 17 So. 3d 1140, 1143 (Miss. Ct. App. 2009). The Court of Appeals affirmed the trial judge's holding that a two-week period to designate experts did not establish special circumstances. *Id.* Similarly, in *Deiorio*, expert testimony was excluded when the plaintiff claimed that Christmas and other concerns were the reasons expert witnesses were untimely designated forty-two days before trial instead of sixty. *Estate of Deiorio ex rel. Deiorio v. Pensacola Health Trust, Inc*., 990 So. 2d 804, 806 (Miss. Ct. App. 2008). On the other hand, special circumstances for the late designation of experts were found in *Brennan*, where the Uniform Rules of Circuit and County Court Practice did not come into effect until nineteen months after the suit was filed, the defendant did not request the identity of expert witnesses in pretrial discovery, and the defendant did not claim unfair surprise. *Brennan v. Webb*, 729 So. 2d 244 (Miss. Ct. App. 1998).

¶13. In this case, the MBN failed to show special circumstances for the untimely designation of Agents McMahan and Sullivan. The MBN was fully aware of the requirements of Rule 4.04 and knew that the expert testimony of at least Agent McMahan was required to establish the content of the plastic bags found, yet it still failed to identify him as an expert. The MBN argues that special circumstances were present because the defense was not unduly surprised. Yet, even after designating expert witnesses less than two weeks before trial, the MBN never produced the resume of either expert witness to assist Brown in voir dire. Therefore, it was error to allow Agents McMahan and Sullivan to testify

as experts, because the MBN did not timely disclose Agents McMahan and Sullivan as expert witnesses under Rule 4.04A and because the MBN failed to show special circumstances existed for the untimely designations. Although it was error to allow Agents McMahan and Sullivan to testify as experts, because Brown failed to establish an ownership interest in the seized currency, we find that this was harmless error.

¶14. The Court of Appeals additionally found that the trial judge did not err in admitting the expert testimony because Brown failed to request a continuance and therefore waived the issue. We find that Brown was not required to request a continuance under Rule 4.04A. Brown properly objected to the untimely disclosure of Agents McMahan and Sullivan as expert witnesses, and failure to request a continuance did not result in waiver of the issue.

## CONCLUSION

¶15. The MBN failed to prove that special circumstances existed for the untimely designations of its expert witnesses. However, this resulted in harmless error, because Brown did not establish a valid legal claim to the currency seized by the MBN. Therefore, by default, Brown had no standing to challenge the proposed forfeiture. Accordingly, we affirm the judgments of the Court of Appeals and the Jefferson Davis Circuit Court as to the forfeiture of the $6,000.

¶16. **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, PIERCE AND COLEMAN, JJ., CONCUR.**